# In the United States Court of Federal Claims

No. 23-1042
Filed: November 30, 2023
NOT FOR PUBLICATION

| |
|---|
| STEVEN D'AGOSTINO,<br><br>    *Plaintiff*,<br><br>v.<br><br>UNITED STATES,<br><br>    *Defendant*. |

## MEMORANDUM OPINION AND ORDER

***HERTLING*, Judge**

  Steven D'Agostino, proceeding *pro se*, brought this action on July 3, 2023. The complaint alleges two counts against various defendants.

  Count One alleges three breaches of contract. First, the plaintiff alleges that the United States Postal Service ("USPS") breached a contract with him by failing to deliver, at various points since the 1990s, some of his incoming and outgoing mail. Second, the plaintiff alleges that the United States Copyright Office breached a contract with Mr. D'Agostino by failing to register a copyright for software written by him after he had applied for the copyright and paid the application fee. Third, the plaintiff alleges that Discover Bank breached an ongoing contractual relationship with him by failing to assist him in recouping his $65 application fee from the Copyright Office.

  Count Two of the complaint alleges that the New Jersey Motor Vehicle Commission and its acting director recklessly endangered the plaintiff's security and ability to drive legally when it adopted a policy requiring renewed driver's licenses to be delivered by the USPS.

  The claims against Discover Bank and the New Jersey agency and its acting director were dismissed *sua sponte* for lack of jurisdiction under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). The plaintiff's claims against the USPS and the Copyright Office were left intact. The defendant subsequently moved to dismiss those claims under RCFC 12(b)(1) for lack of subject-matter jurisdiction. The plaintiff sought and was granted additional time to file his opposition to the motion dismiss. The plaintiff has filed an opposition to the motion to dismiss.

  The plaintiff's remaining allegations are that the USPS breached a contract with him by failing to deliver his mail. (Compl. at 1.) The plaintiff contends that "for decades," he has had

problems receiving mail addressed to him and having the mail he sent to others delivered. (*Id.* at 2.) He avers that his problems with mail delivery are "far too voluminous" to list completely but offers some examples, such as an alleged 2001 failure to deliver a municipal court summons; the failure, starting in the early 2000s, to deliver to various recipients his bill payments by paper check; and a 2020 failure to deliver briefs to the New Jersey Superior Court. (*Id.* at 3-4.) He alleges that "as a sender, [he] had [a] direct contract with the Post Office." (*Id.* at 2.)

The most significant harm plaintiff claims to have suffered is the alleged failure by the USPS to deliver a copyright application to the Copyright Office. In 2010, the plaintiff alleges that he attempted to register a copyright in software he developed for an e-commerce shopping cart platform for the purpose of bringing an infringement lawsuit. (*Id.* at 6.) He purports that the allegedly infringing use of his software was producing profits for the infringing users of between $660,000 and $1,100,000 annually, and he alleges that the USPS is responsible for the losses caused by the infringement by failing to deliver the copyright application for the software. (*Id.* at 6, 9.)

The Copyright Office never acted on the plaintiff's mailed application for registration and did not cash his check for the registration fee, so the plaintiff filed a second copyright application online. (*Id.* at 8.) After 13 months, the Copyright Office contacted the plaintiff to correct some problems with his application. (*Id.*) No copyright registration ever resulted from this application, and the plaintiff alleges that the Copyright Office's failure to register his copyright forced him to settle his infringement claim for "a mere $27k, instead of the millions it was worth." (*Id.*) The plaintiff alleges that he "entered into a contract with the U.S. Copyright Office to register [his] proprietary software" when the office accepted his $65 online application payment. (*Id.* at 11.) It then breached that contract by failing to register the copyright.

The plaintiff brought additional claims against Discover Bank, the New Jersey Motor Vehicle Commission, and that agency's director, Latricia Littles-Floyd. These claims were dismissed, because the Court of Federal Claims does not have jurisdiction over any defendants other than the United States. *D'Agostino v. United States*, No. 23-1042, 2023 WL 4388714, at *2 (Fed. Cl. July 7, 2023). The claims against the federal defendants remain pending. The government moved to dismiss the plaintiff's complaint, and, after receiving additional time, the plaintiff responded. Oral argument is not necessary to resolve the pending motion.

The plaintiff is proceeding *pro se*. As a result, his pleadings are entitled to a more liberal construction than they would be given if prepared by a lawyer. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Giving a *pro se* litigant's pleadings a liberal construction, however, does not divest the *pro se* plaintiff of the responsibility of demonstrating that the complaint satisfies the jurisdictional requirements that limit the types of claims the Court of Federal Claims may entertain. *See Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987). In construing a *pro se* litigant's pleadings liberally, a court does not become an advocate for that litigant. Rather, a court ensures that a *pro se* litigant's pleadings are construed in a manner that gives the litigant every opportunity to make out a claim for relief.

The Tucker Act sets forth the jurisdiction of the Court of Federal Claims. This court may entertain "any claim *against the United States* founded either upon the Constitution, or any Act

of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (emphasis added). The Tucker Act "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976).

Because the Tucker Act is only a jurisdictional statute and does not create a substantive right, to maintain a suit in the Court of Federal Claims, a plaintiff must not only rely on the Tucker Act but must also identify a "separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)). Such a money-mandating source of law must give the plaintiff the right to recover damages against the federal government. *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003). If a plaintiff does not raise a constitutional, statutory, or regulatory money-mandating claim or a breach of contract claim against the United States, and the plaintiff's claim does not otherwise fall within the limited jurisdiction of the Court of Federal Claims, the claim must be dismissed for lack of subject-matter jurisdiction under RCFC 12(h)(3).

The defendant argues that the plaintiff has failed to identify a money-mandating source of law under which the Court of Federal Claims could grant it relief for his claims against USPS and the Copyright Office. Therefore, the defendant argues, claim should be dismissed pursuant to RCFC 12(b)(1) for lack of subject-matter jurisdiction.

The plaintiff's complaint alleges two breach of contract claims against federal agencies.[1] (Compl. at 11.) First, the USPS breached an "ongoing contractual relationship" when the plaintiff paid for the postage necessary to deliver his mail and the USPS "later failed to perform [its] end of the bargain" by completing delivery. (*Id.* at 11.) Second, the Copyright Office breached a contract with the plaintiff after he submitted a copyright application for his software and paid the $65.00 application fee, and the Copyright Office did not register his copyright. (*Id.*)

The claims against the USPS are predicated on the alleged failures by the USPS to deliver the plaintiff's incoming and outgoing mail. The allegations are readily discernable from the face of the complaint, and the plaintiff further clarifies in his reply brief that "[his] claims as they relate to the Post Office . . . [are] because of its <u>failure</u> to deliver the mail." (Pl.'s Opp. Mem. at 1) (emphasis in original.)

More than 90 years ago, the Court of Claims held that a cause of action for failure to deliver mail "is one arising upon a tort and not upon a contract." *Threatt v. United States*, 77 Ct. Cl. 645, 646 (1933) (mem.), *cert. denied*, 290 U.S. 696 (1933). The Court of Claims reiterated that conclusion in 1982. *Webber v. United States*, 231 Ct. Cl. 1009 (1982) (per curiam) (quoting *Threatt*, 77 Ct. Cl. at 646 (1933) ("Claims base[d] upon delay in the receipt of mail or failure to

---

[1] The complaint also alleged a breach of contract by Discover Bank, but that claim was previously dismissed as outside the limited jurisdiction of the Court of Federal Claims.

3

deliver mail 'aris[e] in tort and not upon a contract'")).² Decisions of the Court of Claims remain binding on this court unless overruled by the Supreme Court or Court of Appeals for the Federal Circuit. *S. Corp. v. United States*, 690 F.2d 1368, 1370-71 (Fed. Cir. 1982). Judges of the Court of Federal Claims have, as they must, consistently followed this rule and have held that claims based on the failure to deliver mail sound in tort, not in contract. *Zimmerman v. United States*, No. 22-1865, 2023 WL 6389823, at *3 (Fed. Cl. Sept. 29, 2023); *Terry v. United States*, 99 Fed. Cl. 384, 391-92 (2011); *Moore v. U.S. Postal Serv. Emps.*, No. 10-65C, 2010 WL 2507797, at *2 (Fed. Cl. June 21, 2010); *Naskar v. United States*, 82 Fed. Cl. 319, 321 (2008); *see also Blazavich v. United States*, 29 Fed. Cl. 371, 374 (1993).

Under binding precedent, the plaintiff's claims alleging injury from the failure to deliver mail that he has posted or that has been sent to him sound in tort and are therefore beyond the jurisdiction of the Court of Federal Claims under the Tucker Act. Accordingly, the plaintiff's claims against the USPS must be dismissed.

The plaintiff also claims that by submitting to the Copyright Office payment that the Copyright Office accepted, a contract was created between the Copyright Office and himself for registering a copyright in his software. The existence of a contract is a question of law. *Cal. Fed. Bank v. United States*, 245 F.3d 1342, 1346 (Fed. Cir. 2001). A complaint must "allege facts establishing the existence of a contract with the government." *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1381 (Fed. Cir. 2019). To establish the existence of a contract with the federal government, a plaintiff must allege facts sufficient to demonstrate: (1) a mutual intent of the parties to contract; (2) an unambiguous offer and acceptance; (3) consideration; and (4) "actual authority" by a government representative "to bind the [g[overnment" in contract. *Id.*; *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003). The plaintiff has failed to plead facts plausibly alleging the existence of a contract between himself and the Copyright Office.

The first step in securing a copyright is the completion of an application and the payment of an application fee. The Copyright Act directs the Register of Copyrights to register a copyright only "after [an] examination" to "determine[ ] that, in accordance with the provisions of [the Act], the material deposited constitutes copyrightable subject matter and that the other legal and formal requirements of [the Act] have been met." 17 U.S.C. § 410(a). When the Copyright Office "determines that . . . the material deposited does not constitute copyrightable subject matter or that the claim is invalid for any other reason, the Register shall refuse registration." 17 U.S.C. § 410(b).

---

² *Webber* also notes that "alleged violations of various federal statutes and postal service regulations and directives do not give rise to claims for damages against the United States." 231 Ct. Cl. at 1009.

4

The Copyright Act's rules and process for registration imply that the submission of an application for a copyright initiates an evaluation process through which the Copyright Office may register an applicant's copyright if the application meets the legal requirements. The Copyright Act does not create any contract or agreement that the Copyright Office will ultimately register an application that an examiner does not find to meet the Office's requirements. When the Copyright Office declines to register an applicant's work, the statute does not provide for a return of the filing fee or any other monetary compensation.

The permissive language establishing the obligation of the Copyright Office to evaluate applications indicates that the submission of an application to the Copyright Office does not create a contract between applicants and the Copyright Office to register any copyright for which an applicant has applied. Because under the Copyright Act, no contract was created between the plaintiff and the Copyright Office when the plaintiff submitted his application for a copyright, the failure of the Copyright Office to register the plaintiff's software cannot as a matter of law plausibly support the existence of a contract between the plaintiff and the Copyright Office. The plaintiff's interactions with the Copyright Office, therefore, did not result in a breach of contract.

Moreover, the Copyright Act provides for no monetary compensation in the event the Copyright Office refuses to register a copyright. The registration provisions of the Copyright Act are silent do not establish any obligation on the part of the Copyright Office to pay an applicant when an application is rejected. The Copyright Act cannot be construed as being a money-mandating source of law that could support jurisdiction.

In the absence of a plausible allegation of the existence of a contract between the plaintiff and the Copyright Office or a claim based on a money-mandating source of law governing the plaintiff's claim against the Copyright Office, the Court of Federal Claims is without jurisdiction to hear the claim, and it must be dismissed.

Having determined that the Court of Federal Claims may not exercise jurisdiction over the plaintiff's remaining claims, the Court must consider whether transfer to a court that could exercise jurisdiction is warranted. 28 U.S.C. § 1631. The claim against the USPS sounds in tort. Before bringing a tort claim against a federal agency, certain administrative steps must be satisfied. 28 U.S.C. § 2675. The plaintiff's claims against the Copyright Office do not sound in tort or contract. The plaintiff may be able to proceed under the Administrative Procedure Act against the Register of Copyrights. The plaintiff's previously dismissed claims against an agency of New Jersey and the agency's acting director implicate state interests that may or may not be cognizable in federal court, depending on how they are framed. Given the multiple theories underlying the claims, it is not clear whether a single federal court could entertain all the plaintiff's claims in a single action. Transfer of the complaint to another federal court is therefore not warranted.

      The defendant's motion to dismiss is **GRANTED**, and the plaintiff's complaint is **DISMISSED** in its entirety without prejudice for lack of subject-matter jurisdiction, pursuant to RCFC 12(b)(1) and RCFC 12(h)(3).  The Clerk is **DIRECTED** to enter judgment accordingly.  No costs are awarded.

      It is so **ORDERED**.

                                            s/ Richard A. Hertling
                                            **Richard A. Hertling**
                                            **Judge**